## J. McCampbell v. The State.

1. Jury Law. — In a trial for felony, the defendant protested *in limine* against any jurors unable to comprehend and speak the English language; but, after his peremptory challenges were exhausted, several jurors so disqualified were forced upon him in spite of his challenge for cause. *Held,* error fatal to the conviction. It is well settled in this State, as a principle of constitutional right, that no juror thus disqualified can be imposed on a defendant over his objection.

2. Same. — The majority of the jury being unable to comprehend English, the defendant's counsel asked leave to address them in a language they understood. The court below refused the request. *Held,* that the requested privilege, if it had been conceded, would not have purged the error in empanelling such jurors. Its refusal, however, effectually denied to the defendant his constitutional right to be heard by himself or counsel, or both.

3. Verdict. — When the defendant has pleaded former conviction or acquittal, as well as not guilty, the verdict must expressly find whether the special plea is true or untrue.

4. Theft — Receiving Stolen Property. — A conviction for receiving stolen property, knowing it to have been stolen, may in this State be had under an indictment for theft; but a conviction for theft cannot be sustained on proof showing the offence to be the receiving of stolen property, knowing it to be such.

APPEAL from the District Court of Cameron.    Tried below before the Hon. J. C. RUSSELL.

The indictment charged the appellant with theft of eleven horses.    A term of five years in the penitentiary was the punishment awarded him.

The matters immediately germane to the rulings are disclosed in the opinion.

No brief for the appellant.

*W. B. Dunham*, for the State.

CLARK, J.    There are several errors patent upon the record in this case, either of which must be deemed fatal to the conviction.

1. As appears from a bill of exceptions duly saved and certified, before the process of empanelling the jury was begun, the defendant objected *in limine* to any person being sworn and empanelled as a juror who did not understand and speak the English language ; which objection was overruled by the court.    Thereupon the jurors, as summoned, were called, and the defendant exercised his right of peremptory challenges until they were exhausted ; after which eight jurors, whose names are set out, were called, and upon their *voir dire* stated that they did not speak or understand the English language.    The defendant then challenged each of these jurors for cause on that account, which challenges were disallowed, and the jurors accepted over his objection.    When the argument was reached, counsel for defendant asked the privilege of addressing the jury in the Spanish language, that being the only language understood by a majority of the jury.    This was refused, although no objection was interposed by the State.

The right of a defendant charged with felony to be tried by jurors who undersand the English language is not an open question in this State.    In *Lyle's Case*, 41 Texas, 172,

the question was maturely considered, and determined affirmatively, and no subsequent legislation, organic or statutory, has qualified the ruling in that case. Our Code of Criminal Procedure, embodying the jury law of 1876, provides that an inability to read and write is a cause for challenge, except when it appears that the requisite number of jurors who are able to read and write cannot be found in the county. Art. 636, sect. 14. But this cannot affect the constitutional qualification as determined in Lyle's case, nor force a citizen to trial in any locality, before a jury, or any portion of a jury, who are unable to understand the language in which the proceedings are required by law to be conducted. A trial would be equally fair and impartial, within the meaning of the Constitution, before a jury of deaf mutes, who, by reason of their misfortune, could not hear a word of the testimony or argument of counsel; and a trial before either could be nothing less than a mockery.

2. After having forced such a jury upon the prisoner, in violation of his constitutional privileges, the error was magnified by a refusal to permit his counsel to address them in a language they could comprehend, or to consume at least a part of the time allotted him for argument in that language. The initial error would, of course, not have been cured by allowing an argument of that character, but the concession would at least have enabled counsel to present their views of the case in a manner intelligible to the jury, instead of being forced to resort to pantomime in so far as eight of the jurors were concerned. This was not permitting the prisoner to be heard by himself or counsel, or both. Const., Art. I., sect. 10.

3. Although the statement of facts fails to set out any evidence adduced in support of appellant's plea of former conviction, yet it is apparent from the charge of the court that such evidence was in fact adduced. The jury were instructed that if they believed from the evidence " that the animals described in the indictment are the same as those described in

case No. 1506, the indictment and proceedings in which case have been offered in evidence before you, and the said animals were taken at the same time and place, so as to make the taking of both but one act," etc., then they should find the special plea in bar to be true ; otherwise, they should find it not true. And they were further instructed that they must by their verdict say whether the special plea was true or not. The verdict as returned and recorded fails to contain any finding upon the special plea, but is a general verdict of guilty. This, of itself, constitutes reversible error. Code Cr. Proc., art. 712 ; *Davis* v. *The State*, 42 Texas, 494 ; *Deaton* v. *The State*, 44 Texas, 446 ; *Taylor* v. *The State*, 4 Texas Ct. App. 29 ; *Brown* v. *The State*, 7 Texas Ct. App. 619.

4. It is not clear to us that the verdict is sustained by the law and the evidence. The facts in evidence, as made to appear to us, are not conclusive in establishing the actual complicity of appellant in the perpetration of the theft, but tend rather to support the conclusion that he received stolen property, knowing the same to have been stolen.

Under a general indictment for theft, a conviction may be had for the offence above named (*Parchman* v. *The State*, 2 Texas Ct. App. 228) ; and upon another trial, if the facts are the same as developed upon the former trial, the attention of the court and the prosecuting officer is called to this feature of the law and the case. If the facts should show an actual participancy by appellant in the original fraudulent taking, a conviction may be sustained for the offence charged, although the appellant may not have been personally present at such taking. *Welsh* v. *The State*, 3 Texas Ct. App. 413 ; *Scales* v. *The State*, 7 Texas Ct. App. 361.

The judgment is reversed and the cause remanded.

*Reversed and remanded.*