[No. 1969.]

## James Grisham v. The State.

1. Practice.— Plea of Autrefois Convict, to be sufficient to set up such defense, must set forth *in hæc verba*, or at least by exhibit, both the complaint and information, if a misdemeanor, or the indictment, if a felony, upon which the former trial was had, and also the judgment then rendered. Such pleading is essential in order to enable the trial court to ascertain whether or not the former trial was had upon a valid information or indictment, without which the conviction would be no bar. The rule is correctly stated as follows: "If the indictment is in form so defective that the defendant, if found guilty, will be entitled to have any judgment entered thereon against him reversed for error, he is not in jeopardy; and, should he be acquitted, he will be liable to be tried on a new and valid indictment."

2. Same.— Failure of the defendant to set out in his plea of former conviction the information upon which his trial and conviction were had rendered his plea of former conviction demurrable, but not void. The State failing to except to the plea in this case, the trial court properly permitted the defendant to introduce proof to support it. See the opinion *in extenso* for the rule applicable to the question.

3. Same— Charge of the Court.— If a special plea of former acquittal or conviction be sufficient to admit evidence, and it is supported by any evidence on the trial, it is the imperative duty of the court to submit its truth or untruth as an issue to be tried by the jury, and it is error to neglect or refuse to do so. In view of the supporting evidence in this case, the court below erred in refusing to submit to the jury the defendant's plea of former conviction.

4. Same.— Under the provisions of article 553 of the Code of Criminal Procedure, a former judgment of acquittal or conviction in a court of competent jurisdiction is a bar to any further prosecution for the same offense, but is not a bar to a prosecution for any higher grade of offense over which said court had not jurisdiction, unless such trial and judgment were had upon indictment or information; in which case the prosecution shall be barred for all grades of the offense. From this rule it follows that, if the trial in the first instance, though for a minor grade, and in a court having no jurisdiction of the higher offense, was for the same transaction, and was had by virtue of an information or indictment, the judgment will be a bar to the higher grade, though the latter be pending in another and different tribunal having jurisdiction of it.

5. Same.— A general rule upon the subject (*autrefois convict*) has been correctly stated as follows: "If the evidence necessary to support the second indictment would have been sufficient to procure a legal conviction upon the first, the plea is generally good; but not otherwise. Even if the first trial was for a misdemeanor and the second for a felony, the test holds good that the plea is sufficient if the evidence requisite to support the second indictment must necessarily have supported a conviction on the first." The reason of the rule is to restrain the State from multiplying prosecutions for the same act, and is based upon the doctrine of carving and former jeopardy. See the opinion *in extenso* on the subject.

6. Practice — Vacation of Judgments in Criminal Causes — Case Stated.— The prosecution in this case was had upon an indictment which charged the

appellant with an assault with intent to murder. In support of his plea of former conviction, the defendant proved that an information was properly filed in the county court charging him with an aggravated assault upon the same person at the same place and time as charged in this indictment; that at a regular term of the said county court, when the case was called for trial, the defendant appeared, waived a jury, pleaded guilty, and that judgment was rendered finding him guilty of aggravated assault, and assessing his punishment at a fine of $25, which judgment concluded with the order that the defendant "be remanded to the custody of the sheriff of Hunt county until such fine and costs are fully paid." The proof further showed that, a few days after the rendition of the said judgment and before the expiration of the term, the county judge, of his own motion, and without the consent of the defendant or his attorneys, made an order purporting to set aside, annul and vacate said judgment of conviction, and, without defendant's motion or request, awarded him a new trial. Upon this state of case is presented the validity of the order of the county court vacating its judgment of its own motion, and awarding the new trial without the consent or request of the defendant. The State maintains that, the case in the county court being a misdemeanor, the rule which in civil cases gives to the court full control over its judgments until adjournment of the term obtains, and that, under that rule, it was authorized to set aside the judgment and award the new trial, without the defendant's consent. But *held:* In criminal cases the power of courts over their judgments during the term at which they are rendered does not extend to cases where punishment has already been inflicted in whole or in part. A conviction followed by an endurance of punishment will bar a future prosecution for the same offense. The recital in the judgment on the former trial in this case, that the defendant be remanded to the custody of the sheriff until the fine and costs were fully paid, implies that he discharged that judgment either by the payment of the fine, or, in default of such payment, by remaining in the custody of the sheriff, pending the attempted vacation of the judgment; in either of which events, the punishment having been, in part, at least, satisfied, it was beyond the power of the court to change the judgment except upon defendant's motion. And upon the whole case it is *held* that the plea of former conviction should have been submitted to the jury under appropriate instructions.

APPEAL from the District Court of Hunt. Tried below before E. W. Terhune, Esq., Special Judge.

The conviction in this case was for an assault with intent to murder A. M. McRae, in Hunt county, Texas, on the 1st day of June, 1885. A term of two years in the penitentiary was the penalty assessed by the jury.

N. J. Ross was the first witness for the State. He testified that, on one Sunday morning in May, 1885, about the 24th day of that month, he went to the railroad depot in Greenville, Hunt county, Texas, took a seat and employed A. M. McRae, a small white boy boot-black, to black his boots. While McRae was blacking witness's

boots the defendant, who is a negro boy, called or sent word to McRae to come and black his boots, which McRae refused to do. When McRae finished the witness's boots, witness left his seat and walked to the other end of the depot platform, and soon heard a noise in the direction of the point he had but recently left. He saw a crowd gathered about a point near the saloon at the depot, and among those gathered there he saw the boy McRae, his head bleeding freely from a wound on the back part. McRae was a slender, sickly-looking boy, of considerably less physical strength than the defendant, and was not over fifteen or sixteen years old.

R. B. Redmond testified, for the State, that he was present at the depot in Greenville, Texas, on the Sunday morning about May 24, 1885, when the defendant and young McRae had a difficulty. Witness heard the defendant call to McRae to come and black his boots, which McRae refused to do. Witness then heard some quarreling, and next saw them together with their arms clasping each other. Some one interfered and separated the two belligerents, and McRae walked off a short distance and took his seat on a wheelbarrow. Witness thought no more of the matter for the time being. Presently McRae passed the witness, going off. Defendant passed, following McRae. He overtook McRae at a point about fifteen feet from where the difficulty occurred, caught him with one hand by the nape of the neck, and with his other hand, in which he held a large piece of an iron coupling pin, struck McRae an overhanded blow on the back of the head. The piece of iron described was about six inches long, about one and a half inches in diameter, and weighed about two pounds. In strking McRae with the piece of iron, the defendant used considerable force, cut a large gash with the rough or broken end of the instrument, and brought a very considerable flow of blood. In striking McRae the defendant struck with the weapon described endwise. After striking the blow, the defendant dropped or threw the iron instrument down. McRae neither staggered nor fell. The defendant did not make any further attempt to injure McRae, though in his anger he cursed and talked boisterously a great deal. No one tried to stop the difficulty. McRae was a young, slender, sickly-looking white boy boot-black.

Cross-examined, the witness testified that no one of those present stopped defendant from striking or attempting to strike McRae a second blow. The defendant and McRae were boys about equal in size. Witness did not know the present whereabouts of McRae. He left Greenville shortly after the occurrence described. The iron pin was next identified, put in evidence, and the State closed.

---

---

The defendant's plea of former conviction, which was filed in this case, reads as follows:

" THE STATE OF TEXAS ⎫ In District Court, July Term, A. D. 1885,
  v.                  ⎬
  JIM GRISHAM.        ⎭ Hunt County.

" And now comes the defendant, and, in addition to his plea of not guilty herein, says that the State of Texas ought not to have and maintain this prosecution against him, because he says that, on the 25th day of May, A. D. 1885, the State, by the county attorney of Hunt county, to wit, M. M. Brooks, instituted a prosecution against him in the county court of said Hunt county by filing in said county court a complaint in writing, duly sworn to by the said A. M. McRae, and an information in due form of law, charging this defendant with an aggravated assault and battery upon the person of the said A. M. McRae, with a certain piece of iron alleged to be a deadly weapon, on the 24th day of May, 1885; that said offense charged in said affidavit and information is the same offense charged against the defendant in the indictment herein; that on, to wit, the 15th day of June, 1885, the said county court being then in session, this defendant was duly and legally convicted of said offense by said county court, and a fine of $25 assessed against him by the said county court, and a judgment legally entered against him in the minutes of the said court, upon the finding aforesaid; that said judgment has never been legally set aside; and the defendant alleges that the same is in full force and effect, and was at the time of the finding of the bill of indictment herein charging him in this court with an assault with intent to murder the said A. M. McRae; a copy of which judgment is hereto attached, and made a part hereof, marked Exhibit A. Wherefore defendant pleads a former conviction of the offense alleged in the indictment herein, and prays the court that he may be discharged from this prosecution." Subscribed and sworn to, etc.

." *Exhibit A.*

"THE STATE OF TEXAS ⎫
  v.                  ⎬ June 15, 1885.
  JIM GRISHAM.        ⎭

" This day, this cause being called, come the county attorney for the State, and the defendant in person and by attorney, and announce ready for trial. The defendant here entered his plea of guilty of the State's charge in this cause, waived a jury and submits the cause to the court; and the court, after hearing the pleas of the parties,

finds the defendant guilty of an aggravated assault, and assesses his punishment at a fine of $25. It is therefore considered and adjudged by the court that the State of Texas do have and recover of and from the defendant, Jim Grisham, the sum of $25, and all costs herein incurred, and that he be remanded to the custody of the sheriff of Hunt county, Texas, until such fine and costs are fully paid."

W. C. Jones was the first witness for the defense. He testified that he was an attorney-at-law. At the last term of the county court of Hunt county, witness was appointed by County Judge Sherrill to conduct the case of the defendant, whose trial was then pending upon a charge of aggravated assault and battery upon the person of A. M. McRae, which offense was alleged to have been committed with a piece of iron, in Hunt county, Texas, on Sunday morning May 24, 1885. The defendant on trial was the same defendant charged in that case; the injured party McRae, alleged in this indictment, was the same McRae named in that case; the same defendant was, in that case, charged with the same transaction charged in this case, and the two assaults are identical,— the one and the same. Upon the advice of the witness, the defendant on the trial for aggravated assault and battery waived a jury, pleaded guilty, and was fined by the county judge in the sum of $25. A few days later witness and Judge Sherrill met on the streets of Greenville, when Judge Sherrill told the witness that he was going to set the said judgment aside and grant a new trial. Witness neither consented nor objected, but merely remarked: "All right." Witness then saw the defendant and told him what Judge Sherrill had said. Witness was not present in court when the order was entered granting the defendant a new trial.

The defense next read in evidence the following affidavit for the information:

"THE STATE OF TEXAS,  ⎫
    County of Hunt.      ⎬
                          ⎭

"In the name and by the authority of the State of Texas: Personally, before the undersigned authority, this day came and appeared A. M. McRae, who, after being by me duly sworn, on oath deposes and says that, heretofore, to wit, on the 24th day of May in the year of Our Lord, 1885, in said county of Hunt and State of Texas, Jim Grisham, late of said county and State, with force and arms, did then and there unlawfully make an aggravated assault and battery upon him, the said A. M. McRae, with a certain piece

of iron, the same being then and there a deadly weapon. Contrary to the form of the statute in such cases made and provided, and against the peace and dignity of the State.

His
"A. M. ⋈ McRAE.
mark.

"Sworn to and subscribed before me this the 25th day of May, A. D. 1885.          M. M. BROOKS, County Attorney."

The defense next read in evidence the information based upon the foregoing affidavit, and next, the judgment of the county court which is copied as an exhibit to the plea of former conviction.

Charley Hawkins testified, for the defense, that he was at the depot in Greenville on the Sunday morning in May, 1885, when the difficulty between the defendant and McRae occurred. Defendant asked McRae to black his boots. McRae refused, got angry and cursed the defendant. A little scuffle ensued, after which McRae walked off and sat down on a wheelbarrow. Defendant followed and kicked McRae, who then threw an iron pin at defendant and walked off. Defendant followed, overtook McRae, seized him by the back of the neck and struck him with an iron pin, which he then threw down and walked off, making no other effort to strike McRae. Nobody interfered. Witness had seen McRae black the boots of Sam Wynn, a yellow negro who worked at the saloon. The railroad spike which McRae threw at defendant was not the same as the piece of iron with which defendant struck McRae.

The defense having closed, the State, over the defendant's objection, read in evidence the following order of the county court:

"THE STATE OF TEXAS )
No. 1173.          *v.*          } June 19, 1885.
JIM GRISHAM.          )

" This day, this cause being called, came the county attorney for the State, and the defendant in person and by attorney. Then the court being of the opinion that the law is for the defendant, of his own motion sets aside the judgment herein, and grants the defendant, Jim Grisham, a new trial of this cause. It is further ordered that the cause stand continued to the next term of this court."

The motion for new trial raised the questions discussed in the opinion. At an early day of the term the conviction in this case was affirmed, and the opinion which follows, and by which the judgment is reversed, was rendered on a motion for a rehearing.

*R. L. Porter* and *Montrose & Grubbs*, for the appellant.

*J. H. Burts*, Assistant Attorney-General, for the State.

OPINION ON MOTION FOR REHEARING.

White, Presiding Judge.   Appellant was convicted in the court below of an assault with intent to murder, upon an indictment charging him with that offense.   In connection with his plea of not guilty he pleaded specially in this case that he had already theretofore been tried and convicted for the same offense in the county court upon a complaint and information for an aggravated assault growing out of the same identical transaction upon which the indictment in this case was founded.

As presented, the plea was in itself defective and insufficient in that it did not allege, as required, the proceedings which resulted in such former conviction.   Such a plea, to be sufficient, should set forth *in hæc verba*, or at least by exhibit, both the complaint and information, or the indictment (as the case may be) of the former trial, and also the judgment of conviction.   (See Willson's Crim. Forms, 615, p. 277; 1 Bish. Crim. Proc. (3d ed.), § 814; *Williams* v. *The State*, 13 Texas Ct. App., 286; *Adams* v. *The State*, 16 Texas Ct. App., 162; *Hefner* v. *The State*, 16 Texas Ct. App., 573; Code Crim. Proc., art. 525.)

This is essential in order that the court trying the plea may know that the former trial was upon a good and valid information or indictment, without which the conviction would be no bar.   " When the indictment is in form so defective that the defendant, if found guilty, will be entitled to have any judgment entered thereon against him reversed for error, he is not in jeopardy; and, should he be acquitted, he will be liable to be tried on a new and valid indictment."   (1 Bish. Crim. L. (7th ed.), § 1021; Whart. Crim. Pl. & Prac. (8th ed.), § 5457.)

The judgment is also essential to a plea of former conviction in order that it may be made to appear that the prisoner has received the proper punishment and sentence required by law.   In a word, the accused is required to show not only the nature of the former prosecution and conviction or acquittal with certainty, but also show the record or its substance to the court.   (*Coleman* v. *Tennessee*, 7 Otto, 525.)

The plea was defective in this instance in omitting to set out the information upon which the former trial was had.   It was, therefore, demurrable, though not void.   However, there was no exception taken to it by the prosecution, and the court permitted evidence to be introduced by the defendant in support of it.   This was entirely proper.   For the rule is that " where a plea is a mere nullity,

evidence may be properly excluded which is offered in support of it. Not so, however, when it is merely defective and liable to be held bad upon exception; for that would be a trial of the sufficiency of the pleading upon the admission of evidence on the trial, after the time for its amendment had passed, and might exclude a good defense without objecting to the manner in which it was pleaded, to the surprise and injury of the defendant." (*Deaton* v. *The State,* 44 Texas, 446; *Quitzow* v. *The State,* 1 Texas Ct. App., 47.)

From the evidence adduced it appeared that an information was properly filed in the county court, charging defendant with the commission of an aggravated assault upon the same injured party, and at the same time and place, as mentioned and charged in this indictment; that at a regular term of said court, when said case was called for trial, defendant appeared, waived a jury, pleaded guilty, and judgment was rendered against him by the court, finding him guilty of an aggravated assault, and assessing his punishment at a fine of $25. But it is further shown by the evidence that, a few days after the rendition of this judgment and before the term at which it was rendered had expired, the county judge, of his own motion, and without the consent of defendant or his attorney, set aside, annulled and vacated said judgment of conviction, and granted defendant a new trial,— he having never requested the same by motion or otherwise.

Such being the evidence for and against the plea of former conviction in this case, the learned special judge trying the case refused to submit in his general charge the truth or falsity of the plea as an issue in the case to be found by the jury, and also refused to give them in charge a special requested instruction of defendant presenting the issues on the plea.

It is urgently insisted on this appeal that the learned judge erred in declining and refusing to submit the plea on the evidence, as an issue to be found and determined by the jury, because, it is strenuously contended, the action of the county court, in attempting to vacate, annul and set aside its judgment and grant a new trial, was, under the circumstances stated, absolutely null and void, for want of legal authority, and that on account of such want of authority said judgment of conviction has not been set aside, but was and is still a valid and subsisting judgment, in full force, and binding both upon the court and defendant. And if of force and effect notwithstanding the attempt to vacate it, that the evidence adduced amply supported the plea of former conviction, and hence it should have been submitted as a matter to be found by the jury.

If a special plea of former acquittal or conviction is sufficient to admit of evidence, and is supported by any evidence at the trial, it is the bounden duty of the court to submit whether it is "true or untrue" as an issue to be tried and found by the jury, and it is error to neglect, fail or refuse to do so. (Code Crim. Proc., art. 525, subdivis. 1, 526, 527, 712; *Davis* v. *The State*, 42 Texas, 494; *Deaton* v. *The State*, 44 Texas, 446; *Quitzow* v. *The State*, 1 Texas Ct. App., 47; *Brown* v. *The State*, 7 Texas Ct. App., 619; *McCampbell* v. *The State*, 9 Texas Ct. App., 124; *Simco* v. *The State*, id., 338; *Smith* v. *The State*, 18 Texas Ct. App., 329; *Pickens* v. *The State*, 9 Texas Ct. App., 270; *White* v. *The State*, 9 Texas Ct. App., 390; 20 Fla., 869; 95 Ind., 471; 33 Iowa, 535.)

But the primary question to be solved is, Had the county court any authority, of its own motion, to set aside its judgment of conviction for aggravated assault, without the consent and in opposition to the wishes of defendant? It is claimed, in behalf of the prosecution, that, the case in the county court being a misdemeanor, the same rule would obtain with reference to such judgments as obtains in civil cases, which is that "until adjournment of the term a court has full control over its judgments, and can, upon its own motion, set aside or reform the same, or grant a new trial, according to the justice of the case, upon the merits as well as matters of form." ( *Wood* v. *Wheeler*, 7 Texas, 13; *Puckett* v. *Reed*, 37 Texas, 308; *Byerly* v. *Clark*, 48 Texas, 345; *Blum* v. *Wettermark*, 58 Texas, 125; *Hooker* v. *Williamson*, 60 Texas, 524; 2 Cond. Civil Cases (Willson), §§ 313, 572.)

We have a statute upon former acquittals and convictions, which declares that "a former judgment of acquittal or conviction in a court of competent jurisdiction shall be a bar to any further prosecution for the same offense, but shall not bar a prosecution for any higher grade of offense over which said court had not jurisdiction, unless such trial and judgment were had upon indictment or information, in which case the prosecution shall be barred for all grades of the offense." (Code Crim. Proc., art. 553.) But if the trial in the first instance, though for a minor grade and in a court having no jurisdiction of the major or higher offense, is for the same transaction, and had by virtue of an information or indictment, the judgment will be a bar to the higher grade though the latter be pending in another and different tribunal having jurisdiction of it. (*Allen* v. *The State*, 7 Texas Ct. App., 298; *Achterberg* v. *The State*, 8 Texas Ct. App., 463; *White* v. *The State*, 9 Texas Ct. App., 390.)

Before the adoption of our statute the rule in this State was that

"if, on the trial of a major offense, there can be a conviction of the minor, then a former conviction or acquittal of the minor will bar the major. [Citing Wharton, § 563.] And it is in connection with this that the same author says: 'When the evidence necessary to support the second indictment would have been sufficient to procure a legal conviction upon the first, the plea is generally good, and this is true although the first trial was for a misdemeanor and the second for a felony.'" [Citing Whart., §§ 565, 566.] (*Thomas* v. *The State*, 40 Texas, 36.)

"Where the evidence necessary to support the second indictment would have been sufficient to procure a legal conviction upon the first, the plea is generally good; but not otherwise. Even where the first trial was for a misdemeanor and the second for a felony, the test holds good that the plea is sufficient if the evidence requisite to support the second indictment must necessarily have supported a conviction on the first." (Whart. Crim. Pl. & Prac. (8th ed.), §§ 456, 471; *Rogers* v. *The State*, 10 Texas Ct. App., 655.)

We have been led into a discussion of this branch of the law of the case with a view of showing that judgments in misdemeanor cases may and oftentimes do become most effectual in preventing judgments of a more serious character, affecting both liberty and life. The principle underlying these rules is that "by selecting a minor stage and prosecuting it with the evidence of the major stage, declining to present an averment of the latter, the prosecution may preclude itself from afterwards prosecuting for the major offense in a distinct indictment. Otherwise the prosecution might arbitrarily subject a defendant to trials for a series of progressive offenses on the same proof tentatively applied, until at last a conviction should be reached." The prosecutor may bar himself by selecting a special grade of the offense. (Whart. Crim. Pl. & Prac., §§ 465, 467.) He may carve as large an offense out of a single transaction as he can, yet he must cut only once. (*Quitzow* v. *The State*, 1 Texas Ct. App., 47; *Simco* v. *The State*, 9 Texas Ct. App., 338.)

Former jeopardy is another reason for the rule. This constitutional safeguard is that "no person for the same offense shall be twice put in jeopardy of life or liberty." (Const., art. I, sec. 14.) Mr. Bishop says: "The construction of which is, that properly the rule extends to treason and all felonies, not to misdemeanors. Yet, practically and wisely the courts by an equitable interpretation apply it to all indictable offenses, including misdemeanors. . . . We have seen that while statutes are to be strictly interpreted as

against persons charged with crime, provisions introduced in their favor should be construed liberally; and the same distinction applies to a written Constitution. Therefore the constitutional provision now under consideration should be liberally interpreted, extending to cases within its reason though not within its words. On which principle plainly the courts should, as we have seen they generally do, hold it applicable to misdemeanor the same as to treason and felony." (1 Bish. Crim. Proc. (7th ed.), §§ 990, 991.)

" The ancient common law, as well as Magna Charta itself, provided that one acquittal or conviction should satisfy the law; or, in other words, that the accused should always have the right secured to him of availing himself of the pleas of *autrefois acquit* and *autrefois convict*. To perpetuate this wise rule, so favorable and necessary to the liberty of the citizen, in a government like ours so frequently subject to changes in popular feeling and sentiment, was the design of introducing into our Constitution the clause in question." (*Comm.* v. *Olds*, 5 Litt. (Ky.), 137.) " If there is anything settled in the jurisprudence of England and America, it is that no man can be twice punished for the same offense." (*Ex parte Lange*, 18 Wall. (U. S.), 163. See authorities fully cited in *Mitchell* v. *The State*, 42 Ohio St., 383.) The difference between jeopardy and the pleas of *autrefois acquit* and *autrefois convict* is the important distinction that the latter presupposes and are predicated upon verdicts rendered; the former for valid causes which have operated in cases where no verdict has been reached. (Whart. Pl. & Prac., § 491.)

To apply these great and salutary principles of both statutory and constitutional law to the case before us, we recur to the question of the authority of the county court to set aside the first judgment of conviction. If its action in doing so was nugatory and void, then most clearly had defendant already once before been placed in jeopardy for this same offense, for he had been tried upon a valid information for the lesser grade, in a court of competent jurisdiction, in which the evidence necessary to conviction was the same as was essential in the second trial; and his plea of former conviction was therefore good under the rules of law heretofore announced.

As to the power of a court over its judgments in criminal cases during the term, Mr. Bishop remarks: " As the court may alter its docket entries and other records at pleasure during the term in which they are made, it may, until the term ends, revise, correct and change its sentences, however formally pronounced, if nothing

has been done under them. But steps taken under a sentence,— it may not be precisely certain what steps, doubtless at least a part execution thereof,— will cut off the right to alter it, even during the term. And with the expiration of the term the power expires." (1 Bish. Crim. Proc. (3d ed.), § 1298.) "And subject to exceptions, such as when rights are acquired or relinquished through entries accepted as perfected judicial transactions, the orders and judgments of the court appearing upon the docket may be abrogated or modified, or new ones may be added or substituted for the former ones, or the entries may be amended to conform to the facts, whenever the judge in his discretion sees fit to direct, but not after the close of the term." (Id., § 1342.)

But in criminal cases the power of courts over their judgments during the term at which they are rendered does not extend to cases where punishment has already been inflicted in whole or in part. (*Ex parte Lange*, 18 Wall. (U. S.), 163.) "A conviction followed by an endurance of punishment will bar a future prosecution for the same offense." (Whart. Crim. Prac. & Pl. (8th ed.), § 460, citing *Comm.* v. *Loud*, 3 Met., 328; *Comm.* v. *Keith*, 8 Met., 531; *Fritz* v. *The State*, 40 Ind., 18.)

In the judgment of conviction rendered in the county court, and which was read as evidence by defendant in support of his plea of former conviction, it is recited and ordered "that he be remanded to the custody of the sheriff of Hunt county till such fine and costs are fully paid." It was, as stated, a day or two after the rendition of this judgment that the court, of its own motion, set it aside. It is but fair and reasonable to presume that, in the *interim* between its rendition and attempted annulment and vacation, defendant had, according to its terms, either paid the fine and costs imposed, or been held in custody by the sheriff in default of such payment. If so, in either event he had suffered some punishment under said judgment, and it was then beyond the power of the court either to set it aside, vacate, annul or change it in any substantial respect, unless at the instance or on motion of defendant.

Our conclusion of the whole matter is that the plea of former conviction was, under the circumstances of this case, a matter the truth of which should have been submitted in the charge of the court by appropriate instructions authorizing the jury to try the issue as to whether it was true or untrue.

Because the court erred in refusing to submit defendant's special plea of former conviction to the jury, we are of opinion that our previous judgment of affirmance should be set aside, and that the

judgment of the lower court should be reversed and the cause re-
manded for a new trial.

Motion for rehearing granted, and the judgment reversed and
remanded.

*Reversed and remanded.*

[Opinion delivered December 5, 1885.]